**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**URSULA COLLIER**                                                                           **PLAINTIFF**

**V.**                                                     **CIVIL ACTION NO. 1:20-cv-63-TBM-JCG**

**HEAD MERCANTILE CO. INC.,**                                           **DEFENDANT**
   **an Ohio corporation**

**DEFENDANT'S MOTION TO DISMISS FOR
FAILURE TO PROSECUTE AND FOR SANCTIONS**

The Defendant, Head Mercantile Co., Inc. ("HMC"), by and through its counsel of record, Page, Mannino, Peresich & McDermott, moves the Court to dismiss this case for failure to prosecute and for an award of sanctions against the Plaintiff and her local attorneys, Mr. Bellinder, Mr. Burns, Ms. Williams-Griffin, and Plaintiff's non-Mississippi admitted and non *pro hac vice* admitted "lead counsel," Credit Repair Lawyers of America ("CRLA"), and in support thereof would show the following:

1. Plaintiff's original "local counsel," Jacob Richard Burns, who signed the Complaint [#1, p. 5], has never moved for or been granted leave to withdraw as counsel of record for the Plaintiff. On March 23, 2021, Mr. Burns was suspended from the practice of law in Mississippi, and remains on suspension as of the date of this Motion. See Exhibit A (July 1, 2021 email from Membership Records Coordinator for the Mississippi Bar). Mr. Burns claims that Plaintiff, Ursula Collier, is a client of CRLA, a non-Mississippi and non-*pro hac vice* admitted Michigan law firm, and that Mr. Burns' role in this case was that of an "independent contractor" under CRLA's direction. Plaintiff's single claim, based on 15 U.S.C. § 1692e(8) of the Fair Debt Collection Practices Act ("FDCPA"), is premised upon a false and fraudulent letter designed to appear as if

1

it were drafted by the Mississippi Plaintiff, "disputing" for no reason a debt legitimately owed by the Plaintiff. See [#12-1, ¶ ¶ 4-7 and Exhibits A-1 through A-4]. The false "dispute" letter [#16-2] was not produced until exhibited with Plaintiff's reply to HMC's Motion for Summary Judgment. The false dispute letter was actually surreptitiously drafted, signed, and mailed from Michigan by CRLA using an automated process designed to mass manufacture groundless FDCPA claims, which another Court has characterized as "…merely a sham intended to extract an improper settlement via the authority of the federal courts." *Turner v. Trans Union, LLC*, 2019 WL 3926251, at *5 (S.D. Fla. July 30, 2019). See also, *Meeks v. Enhanced Recovery Co., LLC*, 2019 WL 11502909, at *5 (N.D. Ga. Nov. 18, 2019) (taxing $6,494 against CRLA in favor of Defendant for the added expense caused by CRLA's abusive conduct in a factually similar case); *Jones v. Waypoint Res. Grp., LLC*, 2021 WL 963935, at *5 (E.D. Mich. Mar. 15, 2021) (authorizing award of sanctions against CRLA in similar case for withholding information which should have been disclosed to the defendant, resulting in unnecessary work by defense counsel).

    2.    An attorney's fabrication and presentation of groundless deliberately uninformative deceptive computer-generated "dispute" letters like [#16-1] amounts to "conduct involving dishonesty, fraud, deceit or misrepresentation," in violation of Mississippi Rules of Professional Conduct 4.1 and 8.4(c).[1] "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." Miss. R. Prof. Conduct Rule 4.1(a) and (b). See, e.g., *Mississippi Bar v. Robb* 684 So.2d 615 (Miss. 1996), rehearing denied, certiorari denied 117 S.Ct. 1248, 520 U.S. 1117, 137 L.Ed.2d

---

[1] "It is professional misconduct for a lawyer to:(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another; * * * *(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Miss. R. Prof. Conduct Rule 8.4(c). See, e.g., *Rogers v. Mississippi Bar*, 731 So.2d 1158, 1166 ¶ 25 (Miss. 1999).

330 (Attorney violated Rule of Professional Conduct prohibiting lawyers, in course of representing client, from knowingly making false statement of material fact or law into third person when attorney arranged for his client's out-of-state former husband to appear in state ostensibly to participate in deposition, but in fact for sole substantial purpose of getting husband in state where he could be arrested for contempt and released from incarceration only if he could come up with $10,000 to purge contempt; attorney, through his correspondence with husband's counsel, alleged that deposition was to be taken, he was aware of ignorance by husband and husband's counsel of entry of contempt order, and his purpose was to have husband arrested, not to take deposition). *Goodsell v. The Mississippi Bar*, 667 So.2d 7 (Miss. 1996) (Attorney violated rule of professional conduct providing that an attorney shall not offer evidence that the attorney knows to be false and shall take reasonable remedial measures to correct false evidence, where he represented to court that motion for temporary restraining order was signed by his client, when in fact, attorney had signed document himself, hearing was held to establish validity of signature, and attorney deliberately deceived court by questioning another attorney on witness stand regarding authenticity of signature).

3.  Lawyers in other states have been suspended from the practice of law, or enjoined by federal regulatory authorities from inundating the credit information providers like HMC with groundless form computer-generated dispute letters just like the one on which this case is based. See *In re Disciplinary Action Against McCray*, 755 N.W.2d 835, 843 (N.D. 2008) (Attorney violated rule of professional conduct that prohibited attorney from making a statement to a third person of fact or law that the lawyer knew to be false by sending form letters purported to have been written by client, but were not, disputing items on client's credit report for reasons that were clearly false.); *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001) (In *Gill,* an attorney licensed to

practice law in California "offered credit repair services to consumers, ostensibly through his law office, but in reality through" his co-defendant who operated a credit repair business. *Id.* The defendants attempted to remove all negative information from consumers' credit reports, regardless of its accuracy, and did so "almost exclusively" by "inundating" credit reporting agencies with letters that falsely alleged that various items on credit reports were incorrect. *Id.* at 952).

4. In 2009, the FCRA was specifically amended to authorize credit information providers like HMC to ignore form dispute letters that fail to sufficiently identify the account in dispute, or fail to provide specific information that the consumer is disputing and an explanation of the basis for the dispute. See [#13-2, p. 2].

5. Under similar circumstances, this Court has already determined in one of her other identical FDCPA cases that Ms. Collier *does not even have Article III standing to sue!* See *Collier v. Smith, Rouchon & Associates, Inc.,* 2021 WL 969184, at *5 (S.D. Miss. Mar. 15, 2021):

> It is true that the FDCPA "makes debt collectors liable for various 'abusive, deceptive, and unfair debt collection practices' regardless of whether the debt is valid." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). But although a debt's validity "doesn't erect an absolute *substantive* bar to liability under any and all provisions of the FDCPA," still, a debt's validity "here negates standing by eliminating the concreteness of the alleged injury as to this particular statutory right." *Salermo [v. Hughes Watters & Askanase LLP]* 2021 WL 293311, at *7 [(S.D. Tex. Jan. 28, 2021)]* (emphasis in original). The Court must therefore find that Plaintiffs Ursula Collier and Kerlisa Parker lack standing to bring this action under § 1692e(8) of the FDCPA.

6. On February 11, 2021, during a Telephonic Case Management Conference, Mr. Burns told United States Magistrate Judge John Gargiulo that he had been fired by CRLA, who had hired another local counsel, LaJuanda Sherise Williams-Griffin*,* to take his place. However, Ms. Williams-Griffin failed to appear for that conference and did not offer any excuse in advance for her failure to do so. In [#24] her response to the resulting Show Cause Order [#23], Ms.

4

Williams-Griffin informed the Court that she had "officially terminated her independent contractor relationship and agreement with the firm (Credit Repair Lawyers of America) that handles these claims on behalf of consumers and hires local counsel to file in the local district courts." [#23, ¶ 6].

7. Thereafter, Judge Gargiulo set an in "in-person" status conference for March 15, 2021 and ordered the Plaintiff to appear in person, together with all of the attorneys of record. At that status conference, Plaintiff failed to appear in person or explain her failure to do so. Plaintiff's counsel admitted that they had *never met, or spoken with Plaintiff Ursula Collier, and were not aware of any current address for Plaintiff Ursula Collier.*

8. On March 29, 2021, Ms. Williams-Griffin filed her second Motion for Leave to Withdraw [#34]. HMC opposed that Motion [#34] on the grounds that the alleged signature of the Plaintiff on the Motion did not resemble multiple examples of the Plaintiff's original signatures on consent for treatment forms signed by the Plaintiff giving rise to the legitimate medical debts referenced in the Complaint. See [## 35, 35-1 to 35-4]. Ms. Williams-Griffin's March 29 Motion was filed six (6) days after the onset of Mr. Burns' suspension.

9. On May 11, 2021, Judge Gargiulo entered another Order requiring Ms. Williams-Griffin to serve Plaintiff with a copy of his Order by certified mail, return receipt requested, and thereafter file a certificate of service disclosing the Plaintiff's current address with a copy of the return receipt by May 25, 2021. *Ms. Williams-Griffin has not yet filed these materials*.

10. Instead, on June 4, 2021, a third "local counsel," Thomas J. Bellinder of Jackson, Mississippi, filed a Notice of Appearance [#37] which does not disclose the Plaintiff's current address or indicate that the Plaintiff was personally served with the Notice.

11. On June 9, 2021, a Notice of Hearing as to HMC's [#12]'s Motion to Dismiss or Motion for Summary Judgment and [#33] Motion for Leave to File Supplement were both set for hearing before the Honorable Judge Taylor B. McNeill for July 14, 2021.

12. On June 14, 2021, HMC filed a Motion to Enforce the May 11 Order taking under advisement Ms. Williams-Griffin's Motion to Withdraw as local counsel for the Plaintiff.

13. On June 28, 2021, Mr. Bellinder filed an unverified [#40] Notice of Client Non-Contact stating, without other elaboration or any supporting documentation, that he "has not been able to contact the Plaintiff in this matter, despite diligent and good faith attempts." *Consequently, just like Ms. Williams-Griffin, Mr. Bellinder has not complied with the requirements of the May 11, 2021 Order, either*. That same day, Mr. Bellinder filed his [#41] Motion to Withdraw as Attorney for the Plaintiff. The very next day, June 29, 2021, Magistrate Judge John C. Gargiulo entered an Order [#42] taking Mr. Bellinder's Motion to Withdraw under advisement, noting that Mr. Bellinder has not shown the requisite good cause or reasonable notice required to warn withdrawal, and imposing upon Mr. Bellinder essentially the same notification to the Plaintiff requirements as previously imposed upon Ms. Williams-Griffin in the May 11, 2021 Order similarly taking her Motion to Withdraw under advisement, for the same reasons.

14. None of Plaintiff's local counsel have complied with Local Uniform Rule 83.1(b)'s requirements for withdrawal or substitution of local counsel.

15. The situation in this case is virtually identical to that described in *Harris v. Medical Financial Services*, 2021 WL 2125001 (N.D. Miss. May 25, 2021). The *Harris* Defendant also brought to the Court's attention that *Harris* as well as a similar case involving the Defendant that is currently pending in the Northern District of Mississippi, *Tucker v. Medical Financial Services, Inc*, 3-20cv-035-MPM-JMV—appear to be connected to an alleged pattern of questionable

6

conduct undertaken by Michigan attorney Gary K. Nitzkin, doing business as CRLA, as referenced by Attorney Williams-Griffin in her Motion to Withdraw in both *Tucker* and the case at bar. Although Mr. Bellinder's Motion to Withdraw [#41] does not mention it, he is likewise believed to be serving as "local counsel" for Gary K. Nitzkin, doing business as CRLA, just like Mr. Burns and Ms. Williams-Griffin.

16. Plaintiff and her parade of local counsel have already had ample opportunity to comply with this Court's repeated instructions in various orders and minute entries summarized above. They have been repeatedly warned that this case will be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for noncompliance with the Court's May 11, 2021 and June 29, 2021 Orders. Those Orders and others have been repeatedly violated by the Plaintiff. CRLA should never have filed this groundless case or the others like it. This case should have been voluntarily dismissed, particularly after Ms. Collier's other cases were dismissed. CRLA should not be allowed to further prolong and increase the unnecessary expense and burden of this litigation on the Court and Defendant through further dilatory tactics including, but not limited to an improper premature appearance followed almost immediately by an improper withdrawal attempt by yet another "local counsel," Mr. Bellinder.

WHEREFORE PREMISES CONSIDERED, HMC respectfully moves the Court, as follows:

1. To set this motion for hearing before the Honorable Judge Taylor B. McNeill on July 14, 2021;

2. In the event that this case is not dismissed on the basis of the motions already set for hearing dismiss on July 14, 2021, to additionally dismiss the Complaint for failure of the Plaintiff to prosecute pursuant to Federal Rule of Civil Procedure 41(b); but

3. In the event that the Case is not dismissed, to require Plaintiff's counsel to produce a copy of Plaintiff Collier's retainer agreement with CRLA and a copy of all contracts between CRLA and Plaintiff's trio of "local counsel;"

4. To require the Plaintiff appear in person or alternatively, to correspond with the Court, in writing and under oath regarding her position concerning this case;

5. To suspend all deadlines and dates in this case;

6. To award the Defendant monetary sanctions against Attorney Burns and Attorney Williams-Griffins, Attorney Bellinder, and CRLA;

7. To waive the requirement that this Motion be accompanied by a separate memorandum of authority on the grounds that the relevant authority is cited within the motion; and

8. Granting to HMC such other relief as the Court may deem appropriate under the circumstances.

RESPECTFULLY SUBMITTED, this 1st day of July 2021.

**HEAD MERCANTILE CO., INC.**

By: /s/ *William V. Westbrook, III*
WILLIAM V. WESTBROOK, III, (MSB #7119)
Page, Mannino, Peresich & McDermott, PLLC
759 Howard Avenue
Biloxi, Mississippi  39530
Telephone: 228.374.2100
Facsimile: 228.432.5539
cwestbrook@pmp.org